UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW SALES,

    Plaintiff,

v.

JOHN URANKAR and GATEWAY AUTOMOTIVE,

    Defendants.

No. 08-cv-884-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendants John Urankar and Gateway Automotive (Doc. 18). Plaintiff Andrew Sales has responded to the motion (Doc. 19). The Court also addresses Sales's motions for summary judgment (Doc. 21), for sanctions (Doc. 23) and for reconsideration of appointment of counsel (Doc. 24).

**I.    Background**

This suit arose after Sales purchased a car from Gateway Automotive in April 2008. Urankar is one of Gateway's employees. The complaint alleges that on April 10, 2008, Sales entered into a retail installment contract to purchase from Gateway a 2002 GMC Yukon. As a part of the deal, Sales traded in a 2003 GMC Yukon, paid $1,000 as a downpayment and applied to finance $11,383.95. The April 10 retail installment contract provided that Gateway had assigned the contract to Credit Acceptance Corporation and that all future payments should be made to Credit Acceptance. Sales's payments under that contract would be $369.89 for 57 months.

On April 24, Gateway notified Sales that the assignment of his retail installment contract

had not been accepted by Credit Acceptance but that he could re-apply for credit through Car Financial Services, Inc. On that day, Sales entered into a second retail installment contract to finance $12,678.95 which obligated him to pay $531.25 per month for 36 months beginning May 24. Apparently Gateway told him he could not get financing without purchasing an extended warranty, which added $1,295 to the $11,383.95 price of the car. The April 24 retail installment contract is between Sales and Gateway and does not mention assignment to Car Financial Services.

When Sales sought to make his first payment on May 24, he learned that his April 10 retail installment contract had been assigned to and accepted by Credit Acceptance, and that Credit Acceptance had reassigned Sales's April 10 retail installment contract to Gateway at Gateway's request. Upon learning this, Sales tried to cancel the April 24 financing contract, but Gateway told him it was impossible because they had already sold his trade-in vehicle. Nothing in the filings suggests Gateway assigned the April 24 retail installment contract to any other entity.

After unsuccessfully attempting to pursue this matter in the United States District Court for the Eastern District of Missouri, in December 2008, Sales filed this lawsuit claiming the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, by changing the terms of his April 10 retail installment contract (Count 1) and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2c and 2, by failing to return his trade-in vehicle (Count 2) and by misrepresenting the condition of 2002 GMC Yukon he purchased from Gateway, which developed serious problems shortly after Sales purchased it (Count 3).

The defendants now ask the Court to dismiss the case on the basis that an arbitration

agreement Sales signed on April 10 compels him to arbitrate this dispute at Gateway's request. Alternatively, they seek to dismiss all Sales's claims for failure to state a claim and Count 1 against Urankar because he cannot be liable under the TILA.

## II.     Analysis

### A.     Arbitration Agreement

The arbitration aspect of this dispute is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488 (1987). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). An arbitration clause must be enforced "unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry*, 482 U.S. at 489 (quoting 9 U.S.C. § 2). Whether the parties have formed an agreement to arbitrate is normally a question for the Court to decide using state law contract principles. *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

3

waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *accord County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 823 (7th Cir. 2006).

The defendants rest their arguments on an arbitration agreement dated April 10, 2008, in which Sales and Gateway agreed that either may choose to arbitrate before the National Arbitration Forum

> any controversy or claim (other than a claim relating to [Gateway's] right to repossess the vehicle by self-help, if permitted or by judical [*sic*] process) arising from or relating to the vehicle lease, loan or financing agreement (the obligation) you have entered into with us on the date shown above. . . [including] all tort claims arising from the transaction to which the obligation relates or arising from our enforcement of the obligation, and any question reguarding [*sic*] whether a matter is subject to arbitration under this arbitration agreement.

There is no allegation the April 24 retail installment contract contained any agreement to arbitrate.

It is clear that this arbitration agreement is between Sales, Gateway and Gateway's assignees. It does not bind Urankar, who is merely an employee of Gateway. Thus, the arbitration agreement provides no basis for disposing of any claim against Urankar.

As for Gateway, the April 10 agreement to arbitrate clearly states that it covers disputes relating to the financing agreement "entered into with us on the date shown above," that is, April 10. Therefore, this agreement does not cover disputes arising out of the April 24 retail installment contract, the contract at the heart of Sales's claim. In the absence of any allegation that the April 24 retail installment agreement, contains any arbitration provision, there is no basis to compel any party to arbitrate disputes relating to the April 24 retail installment agreement.

B. Urankar

Urankar asks the Court to dismiss Count 1, Sales's TILA claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Urankar argues that he is not a creditor as that term is defined by

4

TILA, 15 U.S.C. § 1602(f), and cannot therefore be liable under the Act.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic*, the Supreme Court held that this requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl.*, 550 U.S. at 556). The Court now turns to Sales's pleading of his TILA claim.

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see also* 15 C.F.R. § 226.1(b). To achieve this goal, Congress authorized the Board of Governors of the Federal Reserve System to promulgate disclosure regulations, 15 U.S.C. § 1604(a), which it has done in the form of Regulation Z, 12 C.F.R. § 226. Regulation Z requires creditors in closed-end credit transactions like the one at issue in this case to disclose certain information regarding the credit transaction prior to the consummation of the transaction. 12 C.F.R. § 226.17(b). The creditors must

5

disclose the identify of the creditor making the disclosure, the amount financed, an itemization of the amount financed, the finance charge, the annual percentage rate, the variable rate (if applicable), the payment schedule, the total of payments, the demand feature (if applicable), the total sale price, prepayment consequences, late payment consequences, the fact that the creditor will acquire a security interest, insurance and debt cancellation coverage fees, certain security interest fees, a reference to the contract, the assumption policy (if applicable) and the required deposit (if applicable). 12 C.F.R. § 226.18.

> TILA's disclosure requirement only applied to creditors, which the statute defines as:
>
> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.2(a)(17).

Sales makes no allegation in the complaint plausibly suggesting that Urankar, an individual, is a creditor with respect to the retail installment contract involved in this case. Therefore, TILA does not oblige Urankar personally to make any disclosures with respect to the transaction at issue in this case. Furthermore, the Court is hard-pressed to see how Sales could make any allegations consistent with the facts he has already alleged that could establish Urankar as a creditor under TILA. For this reason, the Court will grant Urankar's motion to dismiss Count 1 against him.

    C.    <u>Gateway</u>

Gateway argues that the Court should dismiss it from Count 1 as well because Sales does not provide it sufficient notice of what information Gateway failed to disclose in violation of

6

TILA. Indeed, although Sales appears to believe Gateway treated him unfairly, he has not pointed to any information TILA required Gateway to disclose that it did not, and he does not allege the disclosures were untimely, that is, after the transaction was consummated (although he does allege the consummation resulted from other types of fraud). Furthermore, the Court has reviewed the April 24 financing contract attached to the complaint and finds that none of the items required to be disclosed under 12 C.F.R. § 226.18 are missing. For these reasons, the Court finds that Sales has failed to describe his claim in sufficient detail to give Gateway fair notice of what the claim is and the grounds upon which it rests and has failed to plead facts that plausibly suggest he has a right to relief above a speculative level. Furthermore, after its own review of the transaction documents, the Court does not think Sales is able to plead a TILA claim against Gateway. Accordingly, the Court will dismiss Count 1 against Gateway with prejudice.

### D. Remaining State Law Claims

The Court retains jurisdiction over the remaining state law claims in this case 28 U.S.C. § 1367(a), which extends supplemental federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending, a district court should consider judicial economy, convenience, fairness and comity. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the

state claims to the state court unless there are countervailing considerations." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251).

The Court has considered the relevant factors and finds that it would be appropriate to decline to exercise jurisdiction over Sales's state law claims and the counterclaims in this case. This case is in its early stages, so no significant federal court resources have been invested in it. Furthermore, this case involves run-of-the-mill consumer fraud allegations which Illinois state courts regularly handle with great efficiency. While it is true that pursuing this case in an Illinois state court may require Sales to travel further than were he pursuing it in federal court (Madison County, Gateway's home, is approximately 150 miles from Sales's home in Sikeston, Missouri, while Benton is only approximately 100 miles away), Sales assumed the risk of greater travel when he purchased a car in a community so far from his home. Litigating in Madison County would unquestionably be more convenient to Gateway. Accordingly, the Court will decline to exercise jurisdiction over Sales's state law claims and Gateway's counterclaims and will dismiss them without prejudice. Within the appropriate time limitation, the parties may refile their state law claims in an Illinois state court. An Illinois state court will be able to fully consider Sales's claims under the Consumer Fraud Act.

  E. <u>Other Motions</u>

In light of the foregoing resolution of the claims in this case, Sales's motions for summary judgment (Doc. 21), for sanctions (Doc. 23) and for reconsideration of appointment of counsel (Doc. 24) are moot.

**III. Conclusion**

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Doc. 18).

The Court **GRANTS** the motion to the extent it seeks to dismiss Count 1 and **DISMISSES** Count 1 **with prejudice**. The motion is **DENIED** in all other respects;

- **DISMISSES without prejudice** Counts 2 and 3 of the complaint and all of Gateway's counterclaims, which may be refiled in state court.

- **DENIES as moot** Sales's motions for summary judgment (Doc. 21), for sanctions (Doc. 23) and for reconsideration of appointment of counsel (Doc. 24); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: June 22, 2009**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**